Alden *v.* Gilmore.

EBENEZER ALDEN & *ux. vs.* RUFUS GILMORE.

Building upon, or enclosing, the land of another, without right, is constructive notice to the owner of an adverse claim to it.

But if one enter upon another's land by his consent, or as his tenant; the owner is not disseised, but at his election, until he has had notice, that the occupancy is adverse, or there has been some change in the nature of such occupancy calculated to put him on his guard.

Declarations to a stranger to the title by the lessee, that he holds adversely to the owner, is not evidence of a disseisin.

THIS was a writ of entry and was tried before *Emery J. Jonathan Amory* was once the undisputed owner of the demanded premises, and on *August* 3, 1792, made a deed thereof to *David Gilmore*, the elder, who made a deed of the same, dated *October* 13, 1826, to his daughter, *Patience Alden*, one of the plaintiffs, and wife of the other. Both these deeds were duly acknowledged and recorded.

In defence, there was testimony offered for the purpose of shewing, that a title to the premises had been acquired by the defendant and one *David Gilmore, Jr.*, by disseisin ; and it was attempted to be shewn, that nothing passed by either of these deeds, because the grantors, at the times they were made, were disseised. These attempts were met by opposing testimony on the part of the demandant. There was also some attempt to shew, that *Mr. Alden* had refused to accept the deed to his wife, and that it had been returned to her father, after it was given. The evidence is given in full and at great length in the report of the case, but the nature and purport of it sufficiently appear in the opinion of the Court.

On the whole evidence, the Judge instructed the jury, as follows :

That if they believed, that *Rufus Gilmore* went on to the land, and remained even for forty years acknowledging the title of his father, and in submission thereto, a change of intention on the part of *Rufus* to hold adversely to his father would not operate a disseisin of his father, unless a knowledge of that change of intention was communicated to him. And that, unless notice was communicated, or had been communicated, to said *David Gilmore*, the grantor, at the time said deed was given to said

*Patience Alden,* that said *Rufus* then held adversely to his father, the deed was operative and conveyed title and seisin to the demandants. And that it was not in the power of said *Alden* to defeat the operation of the deed to his wife from *David Gilmore* by returning it back again to the grantor without the consent of his wife : that arrangements of parents with their children, as to property, were to be favourably considered; that affection and foresight led them to permit the occupancy by the child, while the parent retained the title for the mutual accommodation of both parties ; that the interest of a wife in real estate conveyed to her by her father, or any other person, could not in any way be destroyed by her husband without her consent.

The verdict was for the demandant, and was to stand, if the instructions were correct ; otherwise to be set aside.

*Harding,* for the tenant, commented on the testimony reported, and drew from it the conclusion, that if the jury had been rightly instructed in the law, the verdict must necessarily have been the other way. He said, that by the terms of the report, the verdict was to be set aside, if the instructions were erroneous, and contended, that every proposition laid down in them was wrong. Possession and claim of ownership is sufficient to constitute disseisin, whether the owner knows such possession and claim or not. *Stearns on Real Actions,* 1*st. Ed.* 38. Disseisin may take place without the knowledge of the owner of the land. *Poignard* v. *Smith,* 6 *Pick.* 172. Where lands are cultivated and included within fences, as these were, such occupation is evidence to all the world of the claim of the occupant, and will operate as a disseisin against the true owner. *Pro. Ken. Pur.* v. *Springer,* 4 *Mass. R.* 416.

If the cases cited are good law, then the instructions were wrong, and the verdict must be set aside.

*F. Allen* and *J. S. Abbott,* for the demandants.

The first branch of the instructions were strictly correct. When *Gilmore,* the father, knew that his son went on and occupied under him, as between them, that relation must necessarily continue until some notice was given, or something was done, to shew, that he intended to hold adversely.

Nor is it in the power of the husband to defeat a deed made and delivered to his wife, by returning it back without her consent. 2 *Black. Com.* 293 ; *Scenlan* v. *Wright,* 8 *Pick.* 528.

That the husband cannot defeat and destroy the interest of the wife in land conveyed to her is also correct. But if it was not, it is immaterial, as the husband never has dissented from the conveyance to his wife, and has accepted the deed, brought this action upon it, and produced it in Court.

There is no testimony in the case tending to shew, that there was any disseisin of the father prior to his deed to *Mrs. Alden* in 1826. However long the possession may remain, if it be under the true owner, it is no disseisin. *Church* v. *Burghardt,* 8 *Pick.* 327 ; *Sewall* v. *Sewall,* 8 *Greenl.* 194.

The instructions given in relation to the law of disseisin were not material, and a verdict will not be set aside on account of abstract questions of law, however erroneous. *Fleming* v. *Gilbert,* 3 *Johns. R.* 528; *Prince* v. *Shepard,* 9 *Pick.* 183.

The jury could not have been misled by the instructions given. They were correct or irrelevant.

The opinion of the Court, after a continuance was drawn up by

WESTON C. J. — The case finds, that in 1792, when *David Gilmore,* the elder, took his deed of *Jonathan Amory,* of a tract of land, embracing the demanded premises. *David,* the younger, was in the possession and occupancy of them. But his possession does not appear to have been adverse to the title of his father. He continued his occupation, until in 1803, he was succeeded by his brother *Rufus,* who held under his father, in the expectation that he should become the owner, by a conveyance from him in his lifetime, or by will, upon his decease. It is very apparent, that in consequence of the relation subsisting between them, both the sons were permitted to enjoy the land, by the indulgence of their father, without payment of rent, subject to such final disposition of it, as he might appoint. The title of *Amory* then passed by his deed to the elder *Gilmore.* There was no adverse seisin or impediment to the transmission of the fee to him, with whom it remained by law, until divested by disseisin, or lawfully conveyed.

Alden *v.* Gilmore.

On the thirteenth day of *October*, 1826, he conveyed the land, now in controversy, by deed of warranty to *Patience Alden*, one of the demandants, and the wife of the other. It was duly delivered and acknowledged, and on the twenty-sixth of the same *October*, was recorded. The husband has assented to the conveyance, if his assent was necessary, by bringing this action, and producing the deed at the trial. The operation of this deed, could not be countervailed by the impression of *Walter Blake*, the witness, that *Mrs. Alden* had had two deeds, and that they had both been returned to the westward. By whom returned, to whom, for what purpose, or whether done by the knowledge or assent of the husband, does not appear. One of the deeds could not have been that, upon which the demandants rely, and whether the other was is not stated or proved. Without determining the correctness of the instruction to the jury, as to the effect of an express dissent by the husband to the conveyance, we are of opinion that this objection cannot prevail, as no such dissent appears.

The proof very clearly is, from the repeated and uniform declarations of the tenant, except in some of his conversations with *Walter Blake*, that he occupied the land under his father, and with his permission. He was then his tenant at will, at least up to the period when he began to meditate setting up a possessory title. The first intimation he made to *Blake* of such an intention, he testified was in 1824, when *Elliot* was tried for murder, at *Castine*. This, however, is not consistent with another part of his testimony, in which he says that the tenant never intimated that he had any claim, until after the deed was given to *Mrs. Alden*. In the conversation, which he testified took place in 1824, if he was under no mistake as to the date, the tenant said his father had promised the land to him, that he expected it by deed or will, but had been in possession of it long enough to hold, although *Blake* reminded him of what he had formerly told him, that the land belonged to his father, and he occupied it under him, which the tenant did not deny, but said it made no odds. This seems to have been an intimation of what the tenant had in contemplation, but of which he thought better upon reflection, for the same witness testified, that in 1827 or in 1828, he told one *Vaughan*

and *Mowry,* he had no title to the land, but that it belonged to his father.

Upon the whole, the testimony taken together, negatives any pretence of an adverse seisin in the tenant, until after the deed to *Mrs. Alden.* The seisin being in her grantor, he had a right to convey, and his title passed by his deed to her, and to her husband in her right. There being at that time no adverse seisin, no legal question as to the necessity of notice of such a fact to the true owner of the land can arise. Building upon or enclosing the land of another without right is constructive notice to the owner of the adverse claim. *Poignard* v. *Smith,* 6 *Pick.* 172. Of a very different character is the case of one, who enters upon land by the consent, and as the tenant of another. If he could disseise his lessor, except at his election, which is not admitted, it certainly could not be done by a mere declaration to a stranger, of which the lessor has no notice, without any change in the nature of the occupancy, calculated to put him upon his guard.

*Judgment on the verdict*