## ANN M. LANCEY et als. *vs.* DAVID M. PARKS.

### Somerset.    Opinion November 22, 1906.

*Adverse possession.   Disseizin.   Notice of adverse occupancy necessary, when.   Constructive notice of adverse occupancy defined.   How intention to occupy adversely under tax sale must be shown.*

To work a disseizin of the true owner possession must be adverse.

Where one enters into possession of another's land by the owner's consent such owner is not disseized, but at his election, until he has notice actual or constructive that the occupancy is adverse.

To constitute such constructive notice there must be some visible change in the character or nature of the occupancy, calculated to put the owner on his guard and notify him that the land is in the possession of a hostile claimant.

Where one first enters upon land after bidding in the same at a tax sale, his intention to occupy adversely during the year allowed for redemption from such sale must be shown by some unequivocal act hostile to the owner's title, brought home to his knowledge, or which he ought to have known in the exercise of reasonable care and diligence in regard to his property.

On report.   Judgment for plaintiffs.

Real action to recover two lots of land situate in the town of Detroit.   Writ dated August 31, 1903.   Plea, the general issue with a brief statement claiming title to the demanded premises under certain tax deeds and also by adverse possession.

At the September term, 1905, of the Supreme Judicial Court, Somerset County, the parties agreed upon the facts and then agreed that the same should be reported to the Law Court under the following stipulations:   "If upon the aforesaid agreed statement of facts, the plaintiffs are entitled to recover,   then the defendant is to be defaulted and the plaintiffs are to have judgment for the possession of the above described premises and for their costs; otherwise the defendant is to have judgment and for his costs.

The case fully appears in the opinion.

*James M. Sanborn and E. N. Merrill,* for plaintiffs.

*Morse & Anderson,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

POWERS, J.   Real action to recover two adjoining lots, forty-nine containing sixty-five acres and fifty-one containing one hundred and ten acres, in range four in the town of Detroit, reported to the Law Court on facts agreed.

It is admitted that plaintiffs' predecessor in title Wm. K. Lancey, a non-resident owner, possessed and occupied the premises until May 26, 1883 when they were sold for taxes, and that the plaintiffs are the legal owners unless the evidence establishes a better title in the defendant.   The writ is dated August 31, 1903.

At the tax sale the lots were bid in for $7.02 by the defendant and one Haskell, and the town treasurer's deed to them was dated May 26, 1883 and recorded May 28, 1884.   Haskell made a verbal sale of his interest in the property to the defendant and has never claimed any title to it.   The defendant does not contend that he acquired a good title to the land in question by the tax deeds.   It is therefore unnecessary to examine or discuss the regularity of the tax sales.   He claims title by disseizin upon the following facts as stated by him.

"I have remained in open and exclusive possession of it (the premises) in manner following from that time (May 26, 1883) to the present time.

"At time I purchased the land, about fifty acres of it had been used by one William Basford as pasture land and he continued to pasture the same for three or four years after I purchased it with my permission.   This portion of the land was fenced.   At time I purchased, about ten or twelve acres of the land so pastured by Mr. Basford was cleared land, the rest of it was bush land or covered with a young growth.   There was no fence around the rest of the land.   Since then one Frank Jackson has cut the hay on the premises, from one-half to two-thirds of a ton a year.   The consideration he paid me was to look after the property.   He had never pastured the land, nor have the fences been repaired by any one since Mr. Basford ceased to occupy as stated.   I have never tilled

any portion of said premises. The land so pastured by Mr. Basford has been gradually growing up to bushes and trees and is now practically covered with such a growth. At time I purchased, a large portion of the rest of the land, then not pastured by Mr. Basford, was a second growth of gray birch and small fir and a lot of that growing up and some small spruce and pine. The rest of the land was covered with spruce, pine, cedar and hard wood. I have from time to time cut small amounts of lumber and hoop poles on this land. Fourteen years ago I cut about twenty-five cords of wood, and eleven years ago I cut eleven thousand feet of pine on this land. I did this openly, with the knowledge of William K. Lancey and his assigns. It was generally known in the neighborhood where the land is situated that I claimed to be the owner of it and was in possession of it. Neither William K. Lancey nor his heirs nor grantees have ever occupied or attempted to occupy any portion of said land since May 26th A. D. 1883, but I have occupied said land from said time in manner before mentioned, down to the bringing of this action. I have paid the taxes on said land since May 26, 1883, to the present time, 1904, and with the exception of the first two years the land has always been taxed to me."

Do these acts constitute such open, notorious, exclusive and adverse possession as are requsite to gain title by disseizin? From the time when the defendant claims to have taken possession May 23, 1883, to the date of the writ is a few days more than twenty years and three months. Without discussing or deciding the character and nature of the defendant's occupation for the remainder of that period we think it evident that for the first year at least it was clearly insufficient. His only occupation during that year was through Basford pasturing a portion of the land. No other act is shown on the part of the defendant, and no other notice to the true owner that the land was in the possession of a hostile claimant. It is a fair inference from the defendant's own statement that at the time he purchased the land Basford was pasturing it. He says: "At the time I purchased the land, about fifty acres of it had been used by one William Basford as pasture land, and he continued to pasture the

land for three or four years after I purchased it with my permission." The date, May 26th, was a season of the year when the land was fit for pasturage. The burden was upon the defendant to establish his alleged title by disseizin. His own statement is accepted as true by the plaintiffs, and it is reasonable to presume that it was as favorable to him as was consistent with the truth. Under these circumstances his use of the words "at the time" and "continued" significantly points to the fact that Basford was pasturing the land at the time of the tax sale. It is admitted however, that William K. Lancey, the plaintiffs' predecessor in title was in possession and occupation of said premises until that date. If so Basford must have entered and occupied under Lancey up to the time of the tax sale, although he may have occupied with the permission of the defendant after that date. It is a just and well settled principle of law that if one enter into possession of another's land by his consent, or as his tenant, the true owner is not disseised, but at his election, until he has notice that the occupancy is adverse, or there has been some change in the nature of such occupancy calculated to put him on his guard. *Alden* v. *Gilmore,* 13 Maine 178, 1 Cyc. 1032. Here no election, notice or change is shown, nothing to notify Lancey in any way that Basford's occupation was not still in subordination to Lancey's title, or had assumed a hostile character. He might well repose in security believing Basford's possession to be his own. Neither can we believe that the defendant intended during the first year to occupy adversely. He does not so state. He says he was in open and exclusive possession and that it was generally known in the neighborhood that he claimed to be the owner of it. He did not take possession of it until after the tax sale. His deeds were not delivered to him until a year later. During that year the law, which he is presumed to have known, and the very terms of his deeds, gave to the owner the right of redemption. There is nothing to show that during that time he claimed anything more than a qualified ownership in the land, subject to the owner's right to redeem the same upon payment of a paltry sum. We do not decide that a person, who first enters upon land after bidding it in at a tax sale and before he has received a tax deed, can not disseize

the owner before the expiration of the year given for redemption. His intention to do so, however, must be shown by some unequivocable act, hostile to the owner's title, brought home to his knowledge or which he ought to have known in the exercise of reasonable care and diligence in regard to his property. In this case for a year after the tax sale there was no visible change of occupancy, nothing done or said by the defendant to put Lancey upon his guard and notify him that the land was in the possession of an adverse claimant, and nothing stated from which it can be reasonably inferred that the defendant himself, during that period, intended to occupy other than in subordination to Lancey's title and subject to his right of redemption.

The defendant has failed to show that this possession was adverse for the period of twenty years before the commencement of the action.

*Judgment for the plaintiffs.*